**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

Paul Simmons                                                    Case No. 12cv13848

        Petitioner,

v.                                                              **ORDER**

O'Bell T. Winn

        Respondent.

      This is a habeas corpus case under 28 U.S.C. § 2254(d). Petitioner Paul Simmons was charged with and tried on first-degree murder charges in Wayne County, Michigan. The charges alleged he shot and killed Elmon Bostic on June 28, 2006. The jury found him guilty of two counts of second-degree murder and one count of possessing a firearm during the commission of a felony. On his direct appeal, in which he did not include the issues he raises in the instant petition, the Michigan Court of Appeals vacated one of petitioner's convictions for second-degree murder, but otherwise affirmed the convictions. *People v. Simmons,* 2011 WL 3118802, *1 (July 26, 2011). He was unable to secure review in the Michigan Supreme Court. *People v. Simmons,* 409 Mich. 972 (Mich. 2011).

      Consequently, the judgment in his state case became final on July 26, 2011. He then filed this, his first federal habeas corpus petition, on July 31, 2012. Because he failed to comply with the one-year limitations period of the Anti-Terrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2244, *et seq,* he must establish his actual innocence before I can consider the merits of his substantive claims for relief. *McQuiggin v. Perkins,* 569 U.S. 383 (2013). Those claims

1

presently are: 1) defense attorney Luther Glenn was ineffective for failing to investigate and raise an alibi defense; and 2) appellate counsel was ineffective for failing to raise an ineffective assistance of trial counsel claim on direct review.

In an earlier order, *Simmons v. Winn*, 361 F.Supp.3d 719 (E.D. Mich. 2019), I dismissed his other claims and set this matter for an evidentiary hearing on June 29 and June 30, 2020. Following the filing of post-hearing briefs, the matter is now decisional.

For the reasons that follow, I deny and dismiss the petition. I decline to issue a Certificate of Appealability.

## Background

### 1. The Crime

The killing occurred behind an elementary school. A few minutes after hearing shots, a summer camp teacher looked out a window and saw a Black man driving a blue Crown Victoria. A witness working on the roof of a nearby residence saw, shortly after he heard shots, a young Black man holding a handgun at his side get into a Crown Victoria. Having in the meantime come down from the roof, the witness saw the driver as he drove past him in a Crown Victoria. A little over three years later, following petitioner's arrest, the witness recognized petitioner in a lineup as the man whom he had seen following the shooting.

Earlier in the day petitioner and the decedent had been in a dice game. At its end, petitioner accused the victim of cheating. He later told another witness that he would get his money back.

### 2. The Alibi

According to Mr. Glenn's testimony at the evidentiary hearing, which I find entirely truthful, the petitioner told him he had been working when the shooting occurred. Petitioner's

mother sent pay stubs and a time sheet that confirmed petitioner's statement.[1] Mr. Glenn had reached out to a co-worker, with whom petitioner carpooled to and from work. Armed with pay stubs, time sheet, a corroborative witness, and a seemingly airtight alibi, Mr. Glenn timely filed a Notice of Alibi.

As the trial was about to begin, the alibi fell completely apart. The prosecutor informed Mr. Glenn that he had contacted the employer, who told him petitioner was not at work that day and that the alleged pay stubs and time sheet were not those his firm used.

The alibi was totally bogus. Mr. Glenn sensibly and properly told the trial judge that the petitioner would not be offering those witnesses.

### 3. The Trial

Mr. Glenn then proceeded to trial.[2] He did so because he believed that, despite the loss of the alibi option, the case against petitioner was weak. Which it was: the two witness had seen the likely shooter briefly. One, the teacher as he drove away in a car. The other first from the roof and then as he drove by. The circumstances of the lineup were, moreover, possibly impermissibly suggestive. The lineup and trial occurred about three years after the shooting. A responsible attorney could reasonably have hoped for a favorable verdict. That the jury did not

---

[1] Petitioner's post-hearing brief makes much of an inconsistency in Mr. Glenn's account of how he obtained the time sheets. In a deposition, he said he had received them from petitioner. At the hearing, he testified they had come from the petitioner's mother. I am persuaded that none came from petitioner and all came from the mother. I attribute the inconsistency to the fact that Mr. Glenn was testifying at the deposition about events and conversations that took place about nine years before the hearing. At the evidentiary hearing he produced the envelope in which he had received the pay stubs and time sheet. The envelope bore the mother's home address as its return address.

[2] Petitioner's post-hearing brief criticizes Mr. Glenn for his forthright testimony at the evidentiary hearing that, on learning how petitioner had deceived him, he concluded that the petitioner could be of no assistance. I reject that criticism: it was not professionally improper for Mr. Glenn to conclude that anything petitioner might thenceforth do or say useless. Having had the alibi on which he was to have stood pulled out from underneath him, he could hardly have looked to the petitioner for help in getting up. At that point, Mr. Glenn was on his own. The petitioner, not he, is the one to blame for the fact that Mr. Glenn had to go forward single-handedly.

find petitioner guilty of first-degree murder suggests that its verdicts of guilty were compromises.

### 4. Habeas Corpus

### A. Actual Innocence

The gravamen of petitioner's request here is that Mr. Glenn made a constitutionally defective decision when he proceeded forthwith to trial, rather than withdrawing as counsel, obtaining a continuance, and having another attorney take over.

That should have happened, petitioner contends, because Mr. Glenn had failed to investigate another potential alibi: namely, that at the time of the shooting petitioner was with several of his family members at an annual family get-together on the Detroit Fireworks Day.

According to the petitioner, he told Mr. Glenn about that alibi and identified his family as witnesses, but Mr. Glenn did nothing to follow up on what petitioner told him.

I find that half of that contention is true: namely, that Mr. Glenn did nothing about Alibi Number Two. But there is a ready explanation for such "failure": petitioner never told Mr. Glenn about his fallback alternative alibi. Instead, it was a prison yard concoction which his family and former girlfriend helped to put together.

This is manifestly apparent from the fact that, at his sentencing, petitioner told the court that "Truth be told, I'm not even sure where I was three years ago…" (4/28/10 Sentencing Tr., R. 7-10, pgID #1068).

In addition, during the evidentiary hearing the respondent played a jailhouse recording, the gist of which was that petitioner was trying to confirm that the carpooling coworkers of Alibi One had been reached – in both senses of that term.

4

But that was not what petitioner and several members of his family and former girlfriend told me under oath at the evidentiary hearing. Instead, in a vain and deluded attempt to make me believe that petitioner is actually innocent of the crimes for which he was convicted, petitioner and each of his witnesses testified that he was with them at the 2006 Fireworks Day gathering.

With considerable consistency, the witnesses testified about how the petitioner had arrived around 1 p.m. to help set up the drinks table and grill the food, and that he stayed there into the evening. But the very consistency of much of what the witnesses said highlighted the inherent implausibility of Alibi Two. To be sure, there is no reason to doubt that petitioner and his family and friends were in the habit of coming together annually on that occasion. But that multiple people could recollect in June 2020 with such consistency and in such detail when petitioner arrived and what he did on Fireworks Day 2006 is simply not credible.

Petitioner's mother could not, when I asked her, remember the year of petitioner's high school graduation. Once in a lifetime events readily remain fixed in time and mind. Memories of annually repeated occasions, like Summertime parties, in contrast, become in time blended and mixed. The memories of recurrent annual family events, like the Fireworks Day parties are far more likely to blend together. This is especially so when, as here, the circumstances are likely such that who came and what happened remain largely unchanged from one year to the other. Whether someone came or not or arrived earlier or later would have been unremarkable. But a high school graduation – *that's* a milestone event. Petitioner's mother did not remember that, but she tried to convince me her recollection of Fireworks Day 2006 was as clear as glass.

My assessment of her credibility – and that of petitioner's other witnesses – was not helped when petitioner's mother declined knowledge of the fake pay stubs – which Mr. Glenn testified, with irrefutable tangible proof, came from her home address.

Even if there were some reason – of which, given the pre-existence of Alibi One – to believe that any of the alibi witnesses really believed what he or she said, the mother's indisputable involvement in fabricating Alibi One put the lie to everything else.

And there is, of course, a rather sizable Pachyderm in The Room: the first fake alibi. The petitioner originally sought, with his mother's help, to present an entirely bogus alibi, only to have it exposed as such. This precluded any possibility that *any* account he later gave of his whereabouts would pass muster.

In light of the foregoing, I conclude – and I do so without doubt or hesitation – that petitioner has not and cannot meet his burden of persuasion as to his actual innocence.

### B. Ineffective Assistance of Counsel

The foregoing being so, I need not consider the merits of the petitioner's allegations about Mr. Glenn's failure to provide constitutionally adequate representation.

But I do so anyway as a small measure of recompense at petitioner's expense for, first, the fraud he and his mother pulled on Mr. Glenn, and, second, for the defamatory allegations he so casually and unconscionably threw at Mr. Glenn's personal and professional reputation.

Petitioner faults Mr. Glenn for going ahead with the trial. But Mr. Glenn did so, *on petitioner's behalf and in his best interest.*

First: as I have already noted, Mr. Glenn went forward because he reasonably believed he might obtain an outright acquittal. He certainly had a better chance at that result than if he had unwittingly gone forward with the bogus Alibi One. Had the prosecutor not forewarned Mr. Glenn of the trapdoor that lay ahead, it's likely the jury would have returned a first-degree murder verdict.

Second: had Mr. Glenn taken petitioner's *post hoc* advice and withdrawn so that petitioner could have a different attorney, things would not have been materially different. Successor counsel would have contacted Mr. Glenn for his file and insights. At which point, successor counsel would have known he had a suborner of perjury for a client. He could no more have offered Alibi Two than Mr. Glenn could have, even if petitioner had told him about it. This was so for the simple reason that the prosecutor had bogus Alibi One to put the lie to equally bogus Alibi Two.

Under all the circumstances, successor counsel would have had no option except to proceed as Mr. Glenn did.

Third: nor could successor counsel have a chance at a plea bargain. No prosecutor would have extended leniency to a defendant who sought to perpetrate a fraud on the State, the Court, and the jury. The only plea offer would have been to plead to the charges straight up.

That being so, putting the State to its apparently flimsy proof, as Mr. Glenn did, was inevitable.

Thus, Mr. Glenn's jumping ship and forcing someone else to take command would not have led to a change of course. And petitioner certainly has not shown that someone else could have brought him to the safe harbor of a different outcome.

All that being so, petitioner cannot meet the deficient performance and prejudice standard of *Strickland v. Washington,* 466 U.S. 668 (1984).

## Conclusion

The petitioner has failed to show actual innocence. Even if he had done so, he could not have prevailed on his claim of ineffective assistance of counsel. Mr. Glenn cannot be faulted for what he did when he learned his winning alibi was a lie. Petitioner certainly has not shown

anyone else could have done better. Under the circumstances, Mr. Glenn served him far better than he had Mr. Glenn.

All that, and the foregoing being said, I acknowledge the yeoman-like efforts that petitioner's appointed habeas counsel, Phillip Comorski, made on his behalf. Thrown into the breach, he found himself with too many holes and too few fingers to keep things together. His efforts to do the best he could for his client, though unsuccessful, are well worth noting and acknowledging.

For the foregoing reasons, it is hereby

ORDERED THAT the petition for a writ of habeas corpus be, and the same hereby is denied with prejudice.

Jurists of reason could not rationally dispute the result reached herein or its rationale. Accordingly, I decline to issue a Certificate of Appealability.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge[3]

Dated: October 16, 2020

---

[3] Of the Northern District of Ohio, sitting by designation